# H. O. CAMP ET AL. v. TOWN OF BARRE.

## January Term, 1894.

*Enlargement of cemetery. Burial within twenty rods of dwelling. Equity.*

1. Whether or not R. L., s. 3210, absolutely prohibits burials in an enlargement to a cemetery within twenty rods of a dwelling house not erected when the enlargement was made, it is manifestly within the spirit of the statute, if the town at the time of making the enlargement had laid out a street through the land upon which such houses were subsequently erected, knew that the owner intended to use it for that purpose, and that the cellar for one house had been begun.

2. In such case a court of equity will enjoin the town from laying out into lots and selling for burial purposes the land within the prescribed limits.

3. Nor does the orator lose his right to this relief by having failed to object to a few burials already made within the inhibited tract.

Bill in chancery, praying that the defendant town and its cemetery commissioners be enjoined from laying out into lots and selling for burial purposes certain lands within twenty rods of the orators' dwellings. Heard upon a master's report at the September term, 1893, Washington county. ROWELL, chancellor, decreed for the orators in accordance with the prayer of the bill. The defendant appeals. The opinion states the case.

*W. A. & O. B. Boyce* for the orators.

The statute prohibits burials within twenty rods of a dwelling house, and this is a public measure looking to the public health which should be strictly enforced. *Henry* v. *Perry*, 30 N. E. Rep. (Ohio) 1122; *Stevens* v. *Manchester*, 63 N. H. 390; *Coker* v. *Birge*, 9 Ga. 425; *Norcross* v. *Thoms.*, 51 Me. 503; *Hackney* v. *State*, 8 Ind. 494; *Works* v. *Junction Rd. Co.*, 5 McLean (U. S.) 425; *State* v. *Kaster*, 35 Iowa 221; 2 Greenl., Ev., s. 466; *Barnes* v. *Hathorn*, 54 Me. 124.

*John W. Gordon* and *S. C. Shurtleff* for the defendant.

A cemetery is not a nuisance *per se.* *Musgrove* v. *Catholic Church of St. Louis*, 10 La. An. 431; *New Orleans* v. *Church of St. Louis*, 1 La. An. 244; *Lake View* v. *Letz et al.*, 44 Ill. 81; 1 Dill. Mun. Cor., s. 373 (4th Ed.); *Attorney General* v. *Nichol*, 16 Ves. 338; *Dunning* v. *Aurora*, 40 Ill. 481, 486; 1 High, Inj., ss. 785, 789, 792, note.

Since the land owner, under whom the orators claim, acquiesced in the purchase of the addition, they cannot complain. 1 High, Inj., s. 756; *Tichenor* v. *Wilson et al.*, 63 N. Y. 197, 204; *Brendle et al.* v. *Ger. Ref. Cong.*, 33 Pa. St. 415, 423; *White* v. *Booth et al.*, 7 Vt. 131, 133, 134; *Reid* v. *Gifford*, 6 Johns. Eq. 19; *Weller* v. *Smeaton*, 1 Cox Ch. Cas. 102; High, Inj., ss, 756, 786, 797, 884, 885; *Goodall* v. *Crofton*, 33 Ohio St. 271; 3 Dan. Ch. P. & P., 1860 (1st Am. Ed.).

The statute does not refer to houses erected after the lands were purchased and set apart for cemetery purposes. *Boyden* v. *Town of Brookline*, 8 Vt. 284, and cases cited; End., Inter. Stat., ss. 365, 366; *State ex rel.* v. *Stockley*, 45 Ohio St. 304; *Whitcomb* v. *Rood*, 20 Vt. 49.

ROSS, C. J. This is a bill to have the town enjoined from laying out into lots, and disposing of the same, or from

utilizing for burial purposes that portion of the cemetery grounds in Barre Village purchased Nov. 5, 1885, which is within twenty rods of the orators' dwelling houses. These dwelling houses have all been erected since the date of the purchase. The situation at the date of the purchase, as found by the master, was substantially as follows: There was a need for the enlargement of the cemetery grounds, and the town made the purchase for that purpose. At that time none of the dwelling houses owned by the orators had been erected, but the cellar of one had been partly completed. The town had laid out the street on which these dwellings are located (presumably to accommodate such dwellings as might be erected thereon. No other necessity for the street is suggested). The owner of the land, now occupied by the orators' dwelling houses, was using it for a pasture, but had had it plotted into building lots, and by an arrangement, the cellar on one had been partially completed. The town authorities did not know that the owner had had this land plotted into building lots, but they knew that the land would soon, if it were not then, be in demand for building lots. They did not think the digging of the cellar on one of the lots would prevent the use of the land purchased for burial purposes.

Considerable of it could be used for that purpose if the prayer of the orators' bill should be granted. What is found, by the master, in regard to the consultations between the town authorities, renders it apparent that the purchase was made at that time to anticipate the use of the land occupied by the orators' dwelling houses, for such purpose. It is not found that the use of the addition adjoining the house lots of the orators for burial purposes, if the burials were properly made, would create a nuisance to the dwelling houses of the orators, but it is found that such use would materially diminish the value of them. The orators rely upon R. L. 3210, as prohibiting the town from burying

32

any deceased person upon the purchased addition within twenty rods of their dwelling houses. That section follows those sections of the statute which authorize towns to acquire lands by purchase, or by condemnation under the right of eminent domain, for the enlargement or establishment of public burial grounds. It reads:

"This chapter shall not authorize the acquiring ol land for the purpose of the enlargement or establishment of a burial ground so as to bring the same within twelve rods of a dwelling house, and no remains shall be buried in such burial grounds so enlarged or established, within twenty rods of a dwelling house."

It is apparent that this relates to the enlarged or newly established part of such burial grounds. The defendants contend that this provision relates only to such dwelling houses as are in existence at the time of the enlargement, or establishment. No legislation existed on this subject prior to 1858. Then provision was made for the enlargement or establishment of burial grounds by towns, by purchase or condemnation. No damages were assessed except for the lands appropriated. There was a provision that such enlargement or establishment should not be made " so as to bring the same nearer than twenty rods to any dwelling house." Act No. 4, 1858. Then Act No. 25, 1860, as incorporated into section 14, chap. 18, Gen. St., provided such enlargement or establishment might be brought nearer than twenty rods to such dwelling houses, as the owners should give their consent therefor in writing. It also allowed enlargement on those sides of existing burial grounds where the twenty rod limit would not be infringed. This was followed by Act No. 40, 1865, providing that the inhibited twenty rod limit should apply only to dwelling houses existing on adjoining lands " at the time of the enlargement or establishment."

This act purports to give or limit the construction to be placed upon the provisions contained in the General Stat-

utes.  Act. No. 88, 1876, amended the last section of the
General Statutes on this subject and provided that the then
existing law should be so construed as to prohibit an en-
largement or establishment within twelve rods of any dwell-
ing house, and then proceeded, " and no remains shall be
buried in such burial grounds so enlarged or established
within twenty rods of any dwelling house." From this, in
the revision of 1880, came R. L., 3210.

Whether this section, under this history of the changes of
the statute, should be construed, as claimed by the orators,
as prohibiting the burial of any remains in the newly en-
larged or newly established part of any burial grounds
within twenty rods of any dwelling house, although erected
after such enlargement; or, as claimed by the defendants,
is applicable only to dwelling houses in existence at the time
of the enlargement, is not very material to be determined in
this case.  In equity, the intention and spirit of the require-
ment is to be regarded more than the strict letter of the law.
It is a police regulation passed to secure the health of the
public and of individuals.  Disease germs are propagated
and distributed so insidiously and beyond common observa-
tion, both through the air and percolating water, that it is next
to impossible to trace them and determine by ordinary meth-
ods whether a public or private nuisance is created by the
burial of the remains of a deceased person within given
limits to a dwelling house.

To prevent the communication of disease from such source
the legislature thought it wise to prescribe a limit within
which such grounds should not be brought to a dwelling
house, and within which no remains should be buried.
When the town authorities, at the time of acquiring the land
to make this needed enlargement, acting solely for the pub-
lic, knew that the land occupied by the orators' dwelling
houses would very soon be needed for such purposes, had
laid out a street to make it available for that purpose, and

knew that the owner had commenced to dig the cellar for one such dwelling house thereon, it was a clear breach of the spirit of the statute for them to make the purchase; and for the town now to lay that portion of the purchase out into, and sell, lots to persons giving them the right to bury thereon for all time. It is a breach of the spirit if not the letter of the statute which equity will regard and restrain, both in the interest of the orators and of the public; to enforce the law in essence and spirit, and to protect the health of the orators and the public from the insidious propagation and distribution of disease. It is urged that the orators have waived their right by allowing a few burials to be made on the inhibited tract. It may be so as regards such burials. The decree of the chancellor does not disturb interments. But such interments are quite distinguishable from laying the inhibited tract into lots and selling the lots for permanent use by the purchaser and his family and friends and assigns for all time.

*Decree affirmed and cause remanded.*

Taft, J., did not sit.